IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MICHELLE MAUPIN                           :
      Plaintiff
                                    :
v                                         :   Civil Case No. L-10-2659
                                  :
HOWARD COUNTY PUBLIC SCHOOL
SYSTEM, et al.                            :
      Defendants                          :

o0o
**<u>MEMORANDUM</u>**

Now pending before the Court are Plaintiff's Motion for Summary Judgment (Docket No. 29), Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment (Docket No. 27), and several miscellaneous motions. The issues have been comprehensively briefed, and no oral hearing is deemed necessary. See Local Rule 105.6 (D. Md. 2011). For the reasons stated herein, the Court will, by separate Order, GRANT the Defendants' Motion and DISMISS the Second Amended Complaint.

**I.   BACKGROUND**

The history of the dispute between the parties to this litigation, which is unusually lengthy, is fully set forth in the parties' briefs and need not be comprehensively restated here. In short, the Plaintiff, Michelle Maupin, is an African-American female and a teacher formerly in the employ of the Howard County Public School System. Her last teaching assignment was at Wilde Lake High School in Howard County, Maryland. In 2005, Maupin filed suit against the Howard County Board of Education ("the Board") and several individual defendants in the

Circuit Court for Howard County, alleging racial discrimination and harassment ("Maupin I"). See Maupin v. Howard Cnty., Case No. 13C050626062 (Cir. Ct. Howard Cnty. Md. 2005). The case ended with a jury verdict in Maupin's favor in July of 2007.

In August of 2008, contending that the harassing and discriminatory conduct had continued despite her earlier victory, Maupin filed suit in this Court ("Maupin II"). See Maupin v. Howard Cnty. Pub. Sch. Sys., Civil No. 08-2203-WDQ (D. Md. 2008). Her complaint alleged that the defendants (again composed of the Board and various other named individuals) had discriminated against her on the basis of her race, subjected her to a hostile work environment, and retaliated against her for her earlier suit in violation of Title VII of the Civil Rights Act of 1964. See generally Compl., Maupin II, Docket No. 1. The Court granted the defendants' motions to dismiss with regard to several of Maupin's claims and, following discovery and briefing, awarded the defendants summary judgment on all remaining claims on July 15, 2010. See Mem. Op., Maupin II, Docket No. 169 (July 15, 2010). Maupin appealed and, on April 1, 2011, the Fourth Circuit Court of Appeals affirmed this Court's ruling by unpublished per curiam opinion. Maupin v. Howard Cnty. Pub. Sch. Sys., 420 F. App'x 227, 2011 WL 1211309 (4th Cir. 2011).

On July 1, 2009, during the pendency of Maupin II and more than a year prior to this Court's final decision in that action, Maupin received a letter from the superintendent of Howard County Schools, Dr. Sidney Cousin. The letter stated that Dr. Cousin was recommending to the Board that Maupin be terminated on grounds of incompetence, insubordination, and misconduct. It listed several specific incidents in which Maupin was claimed to have acted improperly or unprofessionally, and referenced Maupin's teaching evaluation for the 2007–08 school year reflecting unsatisfactory performance. See Letter from Dr. Sydney Cousin to Plaintiff (June 29,

2009), Docket No. 27-12.  The letter informed Maupin that she was being placed on suspension without pay pending the Board's decision, and that if she desired a formal hearing she should request one within ten days.

On September 24, 2010, proceeding pro se, Maupin filed the instant suit naming Dr. Cousin and the Board as Defendants.[1]  She alleges that Cousin's letter was replete with knowingly false and defamatory statements, and that "issuance of the letter was malicious, intentional discrimination based upon the Plaintiff's race, gender, and participation in protected activity."  Pl.'s 2d Am. Compl. 5, Docket No. 23.  Maupin further contends that Cousin's recommendation of termination, coupled with her suspension, deprived her of due process and "property and liberty interest."  Id.  The Second Amended Complaint contains counts alleging violations of the Maryland Declaration of Rights, Title VII, 42 U.S.C. §§ 1981, 1983, 1985, and 2000(e), as well as common law claims for defamation, negligence, and intentional infliction of emotional distress.  Defendants now move to dismiss or, in the alternative, for summary judgment.  Maupin, too, has moved for summary judgment.[2]

II.   **STANDARDS OF REVIEW**

   a. **Motion to Dismiss**

---

[1]   Maupin also names "The Howard County Public School System," which is not a distinct legal entity susceptible of being sued.  For claims against a school system, the county board of education is the proper defendant.  See Md. Code Ann., Educ. §§ 3-103 and 3-104; James v. Frederick Cnty. Pub. Sch., 441 F. Supp. 2d 755, 758 (D. Md. 2006).

[2]   Contemporaneously with her filing of the Complaint, Maupin filed a Motion to Stay proceedings.  Docket No. 2.  The Motion stated that Maupin wished to pursue administrative remedies but was concerned that applicable statues of limitations might continue to run while she did so.  As no Defendant had yet been served, the Court agreed to stay the case pending the conclusion of Maupin's appeal hearing before the Board.  Some two months later, Maupin advised that the hearing had been resolved against her, and that she planned to pursue the instant litigation.  The Court lifted the stay by paperless Order dated December 2, 2010.  Docket No. 6.  Maupin has apparently continued to pursue the administrative appeal process as well, requesting a hearing before the Maryland State Board of Education.

"[T]he purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Presley v. City of Charlottesville, 464 F.3d 480, 483 (4th Cir. 2006) (internal quotation marks and alterations omitted) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)).

When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997). "Even though the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial and for early disposition of inappropriate complaints." Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009).

To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations and alterations omitted). Thus, the plaintiff's obligation is to set forth sufficiently the "grounds of his entitlement to relief," offering more than "labels and conclusions." Id. (internal quotation marks and alterations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).

    b. **Motions for Summary Judgment**

The Court may grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986); see also Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) (recognizing that trial judges have "an affirmative obligation" to prevent factually unsupported claims and defenses from proceeding to trial). Nevertheless, in determining whether there is a genuine issue of material fact, the Court views the facts, and all reasonable inferences to be drawn from them, in the light most favorable to the non-moving party. Pulliam Inv. Co. v. Cameo Properties, 810 F.2d 1282, 1286 (4th Cir. 1987). Hearsay statements or conclusory statements with no evidentiary basis cannot support or defeat a motion for summary judgment. See Greensboro Prof'l Fire Fighters Ass'n, Local 3157 v. City of Greensboro, 64 F.3d 962, 967 (4th Cir. 1995).

"When both parties file motions for summary judgment . . . [a] court applies the same standard of review." McCready v. Standard Ins. Co., 417 F. Supp. 2d 684, 695 (D. Md. 2006) (citing Taft Broad. Co. v. United States, 929 F.2d 240, 248 (6th Cir.1991)). Furthermore, "each motion [will be considered by a court] separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003).

### III.    ANALYSIS

#### a.  Claims Against the Board and Against Cousin in his Official Capacity

Maupin's Complaint must be dismissed as against the Board and as against Cousin in his official capacity because each of her claims is barred by the doctrine of res judicata, otherwise

known as claim preclusion. In the Fourth Circuit, once an action reaches a "final judgment on the merits," res judicata "bars further claims by parties . . . based on the same cause of action." Young-Henderson v. Spartanburg Area Mental Health Ctr., 945 F.2d 770, 773 (4th Cir. 1991). Specifically, res judicata "bars a party from relitigating a claim that was decided or could have been decided in an original suit. The doctrine was designed to protect litigants from the burden of relitigating an identical issue with the same party or his privy and to promote judicial economy by preventing needless litigation." Laurel Sand & Gravel, Inc. v. Wilson, 519 F.3d 156, 161–62 (4th Cir. 2008) (internal citations, quotations, and brackets omitted). The elements of res judicata are well settled under Maryland law. They are: (1) the parties in the prior litigation and the subsequent litigation must be the same or in privity with each other, (2) the claims or causes of action in the subsequent litigation must be the same as those in the prior litigation, (3) the prior litigation resulted in a final judgment on the merits. See U.S. v. Consumer Health Foundation, 28 F. App'x 178, 183–84 (4th Cir. 2001); Kutzik v. Young, 730 F.2d 149, 151 (4th Cir. 1984); Church v. Maryland, 180 F. Supp. 2d 708, 748 (D. Md. 2002).

This analysis is complicated somewhat when the first court has not ruled directly upon a claim, "for then the second court must determine whether the matter currently before it was fairly included within the claim or action that was before the earlier court and could have been resolved in that court." FWB Bank v. Richman, 354 Md. 472, 493 (1999) (emphasis original). In such situations, Maryland applies the transactional test, which holds:

> What factual grouping constitutes a transaction and what groupings constitute a series, are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

Id.  "Under the transactional approach, if the two claims or theories are based upon the same set of facts and one would expect them to be tried together ordinarily, then a party must bring them simultaneously." Anne Arundel Cnty. Bd. of Educ. v. Norville, 390 Md. 93, 109 (2005).

The three elements of res judicata are satisfied in this case.  As to the first, that the parties in both suits must be the same or in privity, both Maupin II and the instant suit are brought against the Board.  To the extent that Maupin sues Cousin in his official capacity as superintendent, this is no different than suing the Board itself.  See Kentucky v. Graham, 473 U.S. 159, 165–66 (1985) ("official capacity" claims are treated as suits against the agency itself because such claims "generally represent only another way of pleading an action against an entity of which an officer is an agent").  As to the third element, Maupin II ended with a final judgment on the merits when this Court granted summary judgment on July 15, 2010.

Turning to the second element, the Court finds that most of Maupin's claims in the case now at bar are functionally indistinguishable from her claims in Maupin II.  In both suits, Maupin claims violations of Title VII, 42 U.S.C. §§ 1981, 1983 and 1985, the Maryland Declaration of Rights, as well as adding state law claims for defamation, intentional infliction of emotional distress, and negligence.  Both reference the same specific events, to wit: (1) Maupin's unsatisfactory performance evaluation for the 2007–08 school year, (2) Maupin's transfer from Centennial High School to Wilde Lake High School, (3) Maupin's reprimand for refusal to cooperate with the administration in its investigation of an incident in which another teacher allegedly told a student that his name meant "nigger" in another language, (4) Maupin's reprimand for informing parents that her special education co-teacher had been absent from the class for extended periods of time, and (5) an incident in which Maupin allegedly assaulted an assistant principal and screamed that he was a liar.

The only element of Maupin's current Complaint not present in the earlier suit is Cousin's letter informing her that he was recommending to the Board that her employment be terminated.  Maupin cannot now resurrect claims that have already been adjudicated, on the grounds that Cousin's letter made reference to these earlier incidents in support of his recommendation.  Moreover, Maupin's receipt of the letter and her attendant suspension occurred more than a year prior to this Court's final ruling in Maupin II.  There can be no doubt but that they formed an integral part of the set of facts supporting Maupin's earlier claims, such that they were "fairly included within the claim or action that was before the earlier court and could have been resolved in that court." Richman, 354 Md. at 493 (emphasis original).

In short, Maupin's claims in this case are all claims that were included or properly should have been included in her prior suit.  For this reason, her Complaint against the Board and against Cousin in his official capacity must be dismissed.

### b.  Claims Against Cousin in his Personal Capacity

#### i.  Discrimination and Retaliation Claims

Cousin was not a party to Maupin II, and therefore claims against him in his personal capacity must be resolved separately.  Maupin's discrimination claims, as well as her claim under Article 24 of the Maryland Declaration of Rights, are fatally deficient because she has alleged no facts to support her contention that Cousin's actions were taken with a discriminatory or retaliatory motive.  Rather, under the facts as alleged in the Second Amended Complaint, Cousin's recommendation to the Board was merely predicated on prior evaluations and reprimands that this Court has already deemed insufficient to support a cause of action.  Maupin's formulaic recitations to the contrary are exemplary of the mere "labels and conclusions" that courts have consistently found lacking.  See Twombly, 550 U.S. at 555.

### ii.  State Law Claims

Maupin's state law claims must be dismissed as well.  As regards her claim for intentional infliction of emotional distress, Maryland courts have stated that the "tort of intentional infliction of emotional distress is rarely viable," Bagwell v. Peninsula Regional Medical Center, 106 Md. App. 470, 514, (1995), and "to be used sparingly and only for opprobrious behavior that includes truly outrageous conduct." Kentucky Fried Chicken Nat'l Management Co. v. Weathersby, 326 Md. 663, 670 (1992).  Even if Maupin's factual allegations were sufficient to support a Title VII claim, they would still fall well short of this standard.  Her Complaint fails to allege anything approaching the type of conduct that is "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." Batson v. Shiflett, 325 Md. 684, 734 (1992).

Maupin's defamation claims are barred by Maryland's one-year statute of limitations.[3] See Md. Code. Ann., Cts. & Jud. Proc. § 5-105; see also Indep. Newspapers Inc. v. Brodie, 407 Md. 415, 441 (2009).  A defamation claim accrues when the allegedly defamatory statement is made, or, at the latest, when the plaintiff knows or reasonably should have known that the statement was made, regardless of whether the harm allegedly suffered occurs at a later date. Interphase Garment Solutions, LLC v. Fox Television Stations, Inc., 566 F. Supp. 2d 460, 464 (D. Md. 2008).  Maupin states that she received Dr. Cousin's letter on July 1, 2009.  She did not file the instant action, however, until September 24, 2010, more than fourteen months later.

Finally, Maupin alleges that Dr. Cousin failed to prevent the harassment and retaliation to which she was allegedly subjected, and that his actions in this regard were "grossly negligent and malicious." Pl.'s 2d Am. Compl. ¶ 66.  For a plaintiff to state a prima facie claim in negligence,

---

[3] The Second Amended Complaint alleges separate counts for "Defamation" and "Defamation of Character." See Pl.'s 2d Am. Compl. ¶¶ 52–54, 58, Docket No. 1.

she must establish four elements, by alleging facts demonstrating "(1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty." Patton v. U.S.A. Rugby Football, 381 Md. 627, 635–36 (2004). The Court has already considered and rejected, in Maupin II, the claims of harassment and retaliation at the hands of others on which Maupin's negligence claim is predicated. Thus, even assuming that all of the other elements were satisfied, Maupin could not show that Dr. Cousin breached any duty to prevent such behavior.

### iii. Due Process Claim

The only count that need not be dismissed for failure to state a claim involves the limited issue of whether Dr. Cousin deprived Maupin of her right to due process by suspending her without pay. Because the undisputed facts establish that Maupin received adequate pre-deprivation process, however, Cousin is entitled to summary judgment on this claim.

A public employee with a property interest in his continued employment is entitled to pre-termination due process, though the process "need not be elaborate." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 545 (1985); see also Curtis v. Montgomery Cnty. Pub. Sch., 242 F. App'x 109 (4th Cir. 2007). The essential elements are "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story. To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee." Loudermill, 470 U.S. at 546. When pre-termination process is followed by a full post-termination hearing, it need only provide "an initial check against mistaken decisions." Curtis, 242 F. App'x at 111 (quoting Loudermill, 470 U.S. at 545).

It is undisputed that Maupin took part in a pre-deprivation hearing on December 4, 2008, at which she was represented by counsel. Maupin's union representative was also present. At the hearing, Maupin was presented with the results of a two-month investigation by the Board's Director of Secondary Schools, Daniel Michaels. She was informed of the charges levied against her and given an opportunity to address them. See Decision of Hearing Examiner Gregory A. Szoka 43, Docket No. 29-10.

Following the hearing, in a letter dated December 18, 2008, Maupin was given a detailed written summary of the proceedings and the investigator's allegations. See Docket No. 29-11. The letter further informed Maupin that this information was being forwarded to Dr. Cousin for his consideration, and that she would have the opportunity to meet with Dr. Cousin and to present any information she deemed relevant. Id. Defendants contend that Maupin then met with Dr. Cousin twice, on January 15 and February 25, 2009, and also submitted a written email response. Maupin, by contrast, denies that any further meetings were ever held.

Approximately six months after the initial hearing, Dr. Cousin informed Maupin of his decision to recommend her termination and to suspend her without pay pending final approval by the Board. Before approving Dr. Cousin's recommendation, the Board convened an evidentiary hearing that lasted eight days and resulted in 1,527 pages of testimony and 115 exhibits.

Though there is an obvious factual dispute as to whether the January 15, and February 25, 2009 meetings ever occurred, this dispute is not material. The Court finds that, even in the absence of these meetings, Maupin received more than sufficient due process prior to her suspension. She was informed of the charges against her both orally, at a hearing at which she was represented by counsel, and later in writing. In addition to presenting her side of the story at the hearing, she also sent Cousin a written response to the allegations against her.

Maupin argues that this process fell short because she received no formal notice of the nature of the charges prior to the hearing, and was not allowed to present exculpatory evidence. Neither of these elements is required, however. Especially considering the extensive nature of the post-termination procedures in this case, which included a full evidentiary hearing, the pre-deprivation process was more than sufficient to comport with due process and to provide an adequate safeguard against the erroneous deprivation of Maupin's interest in her continued employment. For this reason, Cousin is entitled to summary judgment with regard to Maupin's due process claims.

### c. Miscellaneous Motions

Maupin has filed several miscellaneous motions relating to ancillary issues. These include two Motions to Strike (Docket Nos. 31 and 33), a Motion for Permissive Joinder (Docket No. 40), and a Motion to Expedite Consideration (Docket No. 41).

#### i. Motions to Strike

Mapuin's Motions to Strike request that the Court strike from Defendants' Motion to Dismiss and the accompanying exhibits all mention of the termination procedures followed by the Board subsequent to Dr. Cousin's recommendation. Maupin stresses that her Second Amended Complaint advances no claims relating to her actual termination, and states that she "believes that it is improper for this Court to decide any matter regarding the decision to terminate Ms. Maupin on the grounds that it is not a part of the instant action and that the Court's decision may impact the decision of the Maryland State Board of Education [to whom Maupin has appealed], the Department of Education's Office of Civil Rights, and the Equal Employment Opportunity Commission which have not rendered decisions regarding the actions taken in the effort to terminate the Plaintiff." Pl.'s Mot. to Strike 2, Docket No. 31.

Federal Rule of Civil Procedure 12(f) allows the Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Motions to strike are drastic remedies, and are generally disfavored by the courts. Dawson v. Winter, No. CCB-06-2885, 2007 WL 1610905 at *2 (D. Md. May 21, 2007). "[A] motion to strike on the basis of irrelevancy should only be granted when it is clear that the material in question can have no possible bearing upon the subject matter of the litigation and the material may prejudice the other party." Id. (quoting Simaan, Inc. v. BP Prods. N. Am., Inc., 395 F. Supp. 2d 271, 278 (M.D.N.C. 2005)).

As a preliminary matter, Maupin's Motions to Strike are inappropriate because the Defendants' motions, memoranda, and exhibits are not "pleadings" within the meaning of Rule 12. See id. Moreover, the facts and circumstances surrounding Dr. Cousin's recommendation to terminate Maupin, and the Board's acceptance of that recommendation, are certainly not immaterial. Nor are they impertinent or scandalous. Both Motions to Strike will, therefore, be denied. The Court emphasizes, however, that today's ruling does not pass on the legality of Maupin's eventual termination, should the Maryland State Board of Education deny her appeal.

### ii. Motion for Permissive Joinder

Maupin's second miscellaneous motion requests that she be permitted to amend her Complaint for a third time, to join the "Howard County Government" as a Defendant, on the asserted basis that the "Howard County Government is the custodian of the Howard County Public School System." Docket No. 40 at 1. As discussed above, the proper Defendant with regard to Maupin's grievances is the Board. See Note 1, supra. Maupin offers no cognizable legal theory under which the County itself might be held liable. Her Motion for Permissive Joinder will, therefore, be denied.

### iii. Motion to Expedite Consideration

Finally, Maupin has filed a Motion to Expedite Consideration of her case. This Motion will be denied as moot.

## I. CONCLUSION

For the foregoing reasons the Court will, by separate Order of even date:

1. GRANT the Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment (Docket No. 27);

2. DENY the Plaintiff's Motion for Summary Judgment (Docket No. 29);

3. DENY the Plaintiff's Motions to Strike (Docket Nos. 31 and 33);

4. DENY the Plaintiff's Motion for Permissive Joinder (Docket No. 40);

5. DENY AS MOOT the Plaintiff's Motion to Expedite Consideration (Docket No. 41); and

6. Direct the Clerk to CLOSE the case.

Dated this 7th day of February, 2012.

/s/
_____
Benson Everett Legg
United States District Judge